**JURY DEMAND**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| **JASON CAGLE,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Case No. _____ |
| § | |
| **UNITED SURGICAL PARTNERS** § | |
| **INTERNATIONAL, INC.,** § | |
| § | |
| **Defendant.** | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Jason Cagle (hereinafter "Plaintiff" or "Cagle") files Plaintiff's Original Complaint against Defendant United Surgical Partners International, Inc. (hereinafter "Defendant," "USPI," "You" or the "Company") seeking relief for retaliation under the Sarbanes-Oxley Act of 2002 and for breach of contract (hereinafter the "Complaint"). Plaintiff pleads as follows:

## SUMMARY

1. Plaintiff brings causes of action under the Sarbanes-Oxley Act of 2002 (the "Sarbanes-Oxley Act") against Plaintiff's former employer USPI, for unlawful termination from Plaintiff's position as Chief Financial Officer because Plaintiff objected to, opposed, and provided information about conduct that Plaintiff reasonably believed constituted violations of a "law, rule or regulation," of the United States Securities and Exchange Commission ("SEC") and other provisions of federal and state law relating to fraud upon shareholders.

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

2. Plaintiff also brings an action for breach of contract against USPI.

3. Plaintiff seeks to recover damages, including without limitation the value of Plaintiff's equity that USPI wrongfully forfeited, back pay, front pay, compensatory damages, relief to make Plaintiff whole, reasonable attorney's fees, and costs incurred as a result of Defendant's unlawful misconduct.

4. Plaintiff is an individual who is a former employee of USPI. At the time the Plaintiff was fired, he was the Chief Financial Officer. Plaintiff had been a top performer for USPI for 18 years (16 as an employee; and 2 years prior as outside counsel).

5. Plaintiff raised concerns about how Tenet was reporting/showing its huge financial obligations to fund USPI's employee equity plan. Soon after Plaintiff raised those reporting concerns USPI fired Plaintiff.

## PARTIES AND SERVICE

6. Plaintiff is an individual who resides and is a resident of the State of Texas residing in Dallas County, Texas and was an employee of USPI working in Dallas County.

7. USPI is a Delaware corporation whose principal place of business and headquarters is located at 14201 Dallas Pkwy in Dallas, Dallas County Texas. USPI may be served by and through its registered agent, CT CORPORATION SYSTEM, 1999 Bryan St., Suite 900, Dallas, TX 75201-3136.

## JURISDICTION AND VENUE

8. Prior to and at the time of Plaintiff's termination, USPI was and is a subsidiary of Tenet Healthcare Corporation (hereinafter "Tenet") a publicly traded corporation with a class of

**PLAINTIFF'S ORIGINAL COMPLAINT**

securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C § 78l), and filed reports required by Section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(d)). Prior to and at the time USPI fired Plaintiff, USPI's financial information was included in the consolidated financial statements of Tenet. USPI was, therefore, subject to the provisions of Sarbanes-Oxley Act.

9. This Court has jurisdiction over Plaintiff's claim under the Sarbanes-Oxley Act because that Act authorizes court actions by private parties who allege discharge or other discrimination in violation of 18 U.S.C. § 1514A in the appropriate district court of the United States without regard to the amount in controversy if the Secretary has not issued a final decision within 180 days of filing an administrative complaint.

10. On or about October 31, 2019, Plaintiff timely filed an administrative complaint with the United States Department of Labor.

11. The Secretary of Labor has not issued a final decision within 180 days of the filing of this Complaint.

12. Plaintiff will within seven days after filing this Complaint, file with OSHA a copy of the file-stamped Complaint. A copy of the Complaint will also be served on the OSHA official, if any, who issued findings and/or preliminary order, the Assistant Secretary, and the Associate Solicitor, Division of Fair labor Standards, U.S. Department of Labor.

13. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the Sarbanes-Oxley Act, laws of the United States, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the subject matter of Plaintiff's state law breach of contract causes of action that are so related to and form the same case or controversy as Plaintiff's claims under the Sarbanes-Oxley Act.

**PLAINTIFF'S ORIGINAL COMPLAINT**

14. Venue for this action lies properly in the United States District Court for the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in Dallas County, which is a county included within those assigned to the Dallas Division of the Northern District of Texas.

## FACTS

### Plaintiff's 18 Years of Dedicated Service to USPI

15. Plaintiff started working for USPI in 2001.  At the time, Plaintiff was a corporate and securities lawyer at Vinson & Elkins, UPSI's outside law firm.  USPI were so confident in Plaintiff's abilities that USPI tasked Plaintiff with helping take USPI public.  In 2003, USPI founders Don Steen and Bill Wilcox hired Plaintiff to become USPI's only in-house attorney.

16. In 2010, Plaintiff was promoted to Senior Vice President of Acquisitions, the second most senior person in development.   Plaintiff was then promoted to Chief Financial Officer in January of 2013.

### Plaintiff Helps USPI Achieve Explosive Growth

17. When Plaintiff first began working for USPI (as outside counsel) on USPI's IPO in 2001, USPI had 44 facilities. When Tenet purchased USPI in March of 2015, USPI owned 244 ambulatory surgery centers and 16 short-stay hospitals--a staggering 500% increase in facilities owned and operated by USPI.

18. Plaintiff was instrumental in USPI's successful IPO, its $200 million sale of USPI's Spanish operations in 2005, USPI's $1.8 billion LBO, numerous acquisitions, and USPI's sale to Tenet.

**PLAINTIFF'S ORIGINAL COMPLAINT**

From the time Plaintiff joined USPI in 2003 through Plaintiff's tenure as Chief Financial Officer, USPI's EBITDA grew dramatically.

19. During much of this growth, Plaintiff was either USPI's sole in-house attorney or was assisted by just one other in-house lawyer. Plaintiff ceased serving as USPI's lawyer in any material capacity in 2010, and in any capacity at all when Plaintiff was promoted to Chief Financial Officer in January of 2013.

**Tenet Pursues USPI**

20. At the same time USPI was experiencing rapid growth and success, Tenet's trajectory was on an opposite path.  Between 2003 and 2018, Tenet lost over $5 billion dollars and paid record fines to the Department of Justice, including fines of $745 million in 2006, $42.75 million in 2012, and $514 million in 2016. Not surprisingly, Tenet faced takeover attempts and shareholder revolt. In an effort to stop its serious financial losses, Tenet pursued a number of acquisitions in the 2014-2015 timeframe, including USPI.

21. When Tenet approached USPI, USPI's owners and executive team, including Plaintiff, had worked tirelessly for close to two decades to build USPI into a successful and highly profitable entity.

22. Tenet was unable to give a full cash payment for the enterprise value of USPI, so the transaction occurred in stages from 2015 through 2018.

23. In addition, USPI's management team was only willing to support the transaction if there was an equity compensation plan for USPI employees based solely on USPI's performance. USPI's management team knew Tenet's operating prospects and profitability were low, wanted to protect its employees and was leery of Tenet's bad reputation. USPI knew that to retain the dedicated employees who had built USPI, an equity plan that isolated USPI's performance was necessary.

**PLAINTIFF'S ORIGINAL COMPLAINT**

Tenet agreed.

24. Given its justified concerns about Tenet's poor reputation and operating instability, USPI's ownership informed Tenet that USPI would consider selling to Tenet only if the deal included an equity plan that provided USPI's management team and approximately 100 key employees, with 10% of the upside in USPI's earnings over a seven year period.

25. This plan was designed to be sure that Tenet could not use a classic private equity tactic to cut expenses to the bone and replace the existing executives and employees. The plan was for the USPI team to stay in place and receive full and fair compensation for the value they built and would continue to build in USPI.

26. Tenet was told that without this employee equity plan, the transaction would not occur. In addition, the two respective CEOs agreed on the terms of USPI's independence, as full integration would have been unacceptable to USPI.

27. Tenet agreed to USPI terms, and by 2018, it had acquired 95% of USPI's stock.

28. Plaintiff was granted more than 750,000 stock options under the equity plan.

29. Using a conservative valuation, the Plaintiff's stock options will be worth more than $50 million in December of 2022.

30. Other key executives and employees were granted similar stock options worth well in excess of $500 million, as valued by KPMG. This valuable equity plan is a huge liability that Tenet <u>should</u> have been carrying on its books. When Plaintiff reported that this significant liability was not being appropriately reported on "the books," USPI and Tenet retaliated.

**<u>Plaintiff Raises Reporting and Disclosure Concerns</u>**

31. In approximately November of 2018, Plaintiff became concerned that the potential value

of USPI's equity plan (and USPI's/Tenet's liability for same) had not been publicly disclosed by Tenet, which was a material disclosure given Tenet's market capitalization.  Plaintiff was also concerned that Tenet's failure to disclose was a potential violation by Tenet of the Sarbanes Oxley Act and/or other securities laws.

32. In approximately November 2018, Plaintiff complained about Tenet's reporting in person with USPI's Chief Executive Officer, Bill Wilcox.  Wilcox told Plaintiff to address Plaintiff's concerns over the issue with Tenet's Chief Financial Officer.  Plaintiff did so, but Tenet did not fully or properly disclose this material information.

33. Instead, after Plaintiff complained, Tenet merely disclosed the book value of the Plan of its wholly owned subsidiary in its 2018 10-K, but did <u>not</u> disclose the amounts Tenet would actually have to pay--as Plaintiff recommended because that was material information. Plaintiff continued to have concerns with and complained about Tenet's lack of transparency and refusal to provide full disclosure to stockholders and potential investors.

34. In April 2019, it became clear to Plaintiff that Tenet's lack of transparency had become even more material and required disclosure to the stockholders and potential investors. Therefore, in an April 26 meeting with high level executives, Plaintiff again blew the whistle on Tenet's improper financial reporting. Less than two weeks after Plaintiff blew the whistle for a second time, USPI fired Plaintiff.

**USPI Retaliates**

35. On Friday evening of May 3, 16+ years after Plaintiff was hired by USPI, CEO Brodnax told Plaintiff that he believed there were grounds for "cause" termination under Plaintiff's Employment Agreement.  However, Brodnax told Plaintiff that if Plaintiff voluntarily resigned

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff would receive a severance package with the same monetary terms as a "not for cause" termination under Plaintiff's Employment Agreement.  If Plaintiff did not voluntarily resign his employment, the Board of Directors had to vote on whether to terminate Plaintiff's employment.  Plaintiff did not agree to voluntarily resign and awaited the Board of Director's action on Plaintiff's job status. On May 8, USPI's Board of Directors met and considered whether to fire Plaintiff.  USPI's Board voted to terminate Plaintiff's employment.  On May 9, after the Board of Director's vote, the Company terminated Plaintiff's employment for "cause."  USPI's Board stated that the termination of Plaintiff's employment was for cause.  USPI terminated Plaintiff's employment in retaliation for Plaintiff reporting a Sarbanes Oxley Act violation.

**Contemporaneous Documents and Actions Prove Plaintiff's Firing was Retaliatory**

36. Plaintiff was fired in close proximity to the April 26 meeting where Plaintiff blew the whistle again on Tenet's improper financial reporting.

37. Prior to Plaintiff's firing, USPI had not "written up" Plaintiff, given Plaintiff a bad review, sent Plaintiff written warnings, put Plaintiff on probation or a performance improvement plan.  Quite the contrary, Plaintiff had received nothing but good reviews, multiple promotions, big raises and big bonuses.  It was only *after* Plaintiff blew the whistle on the financial reporting issues that Plaintiff was summarily fired without any prior warning.  If Plaintiff truly had willfully failed to perform Plaintiff's job duties, one would think USPI would have sent Plaintiff several written warnings.  Yet, not even one warning was sent!

**USPI Did not have "Cause" to Fire Plaintiff**

38. USPI's Board fired Plaintiff on May 9, 2019.  USPI's termination letter says the Board fired

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff for Plaintiff's "willful and continued failure to perform Plaintiff's material duties." No evidence indicates Plaintiff ever willfully refused to perform any of Plaintiff's material duties. Not one single contemporaneous email, memo or other document indicates that the Board thought Plaintiff was poorly performing Plaintiff's duties or cause existed to fire Plaintiff.

**USPI Hides the Ball**

39. Plaintiff asked USPI to disclose the minutes of the Board Meeting where the Board met to decide whether or not to fire Plaintiff. USPI refused to disclose the minutes of said meeting. Once again, the lack of transparency by USPI and Tenet speaks volumes. If Plaintiff's firing was legitimate, there would be no reason not to disclose the Board's minutes.

## CAUSE OF ACTION: SARBANES-OXLEY WHISTLEBLOWER PROTECTION - 18 U.S.C. § 1514A

40. Plaintiff incorporates by reference and realleges each allegation in this Complaint.

41. The Sarbanes-Oxley Act, 18 U.S.C. § 1514A, prohibits any company with a class of securities registered under § 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l), or that is required to file reports under §15(d) of the same Act (15 U.S.C. § 78o (d)), including any subsidiary or affiliate whose financial information is included in the consolidated financial statement of such company, or any officer, employee or agent of such company, from discharging, harassing, or in any manner discriminating against an employee in the terms and conditions of employment because the employee provided information relating to alleged violations of 18 U.S.C. §§ 1341, 1343, 1344 or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of federal law relating to fraud against

**PLAINTIFF'S ORIGINAL COMPLAINT**

shareholders.

42. Before and at the time of Plaintiff's termination, USPI was a subsidiary of Tenet, a publicly traded company with a class of securities registered under § 12 of the Securities Exchange Act and USPI's financial information is included in the consolidated financial statements of Tenet. USPI is therefore subject to the Sarbanes-Oxley Act.

43. Plaintiff engaged in protected activities as defined in 18 U.S.C. §1514A by providing information to persons with supervisory authority over Plaintiff (or such other person working for the employer who has supervisory authority to investigate, discovery or terminate misconduct) regarding the fraudulent reporting of USPI's equity plan which he reasonably believed constituted violations of 18 U.S.C. §§ 1341, 1343, 1344 or 1348, various rules and regulations of the Securities and Exchange Commission, and provisions of federal law relating to fraud against shareholders.

44. As a result of Plaintiff's protected activities under the Act, Plaintiff was unlawfully retaliated against and ultimately fired in retaliation, adverse employment actions prohibited by the Act.

45. Plaintiff is entitled to recover damages pursuant to 18 U.S.C. § 1514A. Plaintiff is entitled to reinstatement pursuant to 18 U.S.C. § 1514A at the same seniority status that Plaintiff would have had, but for the discrimination.

### CAUSE OF ACTION:  BREACH OF CONTRACT – AWARD AGREEMENTS

46. Plaintiff incorporates by reference and realleges each allegation in this Complaint.

47. Plaintiff's July 27, 2015 Stock Option Agreement, November 18, 2016 Stock Option Agreement, July 14, 2017, Stock Option Agreement, March 1, 2018 Stock Option Agreement and

**PLAINTIFF'S ORIGINAL COMPLAINT**

July 30, 2018 Stock Options Agreement with USPI are valid and enforceable contracts (the "Award Agreements").

48. Plaintiff performed, tendered performance of, or was excused from performing Plaintiff's contractual obligations under the Award Agreements.

49. USPI breached the Award Agreements by, among other things, failing to allow Plaintiff to exercise various options under the Award Agreements, and by repudiating and forfeiting options under the Award Agreements.  USPI made certain conditions under the Award Agreements impossible by wrongfully terminating Plaintiff's employment.

50. Failure to allow the exercise of these options, making conditions impossible, and by repudiating Plaintiff's right to same, has caused Plaintiff significant damages.

## ALTERNATIVE CAUSE OF ACTION: BREACH OF CONTRACT  EMPLOYMENT AGREEMENT

51. Plaintiff incorporates by reference and realleges each allegation in this Complaint.

52. In the alternative, if Plaintiff is not awarded relief under Sarbanes Oxley Act, then Plaintiff brings a claim for breach of his Employment Agreement's severance provision.

53. Plaintiff's Second Amended and Restated Employment Agreement ("Employment Agreement") with USPI is a valid and enforceable contract.

54. Plaintiff performed, tendered performance of, or was excused from performing Plaintiff's contractual obligations under the Employment Agreement.

55. Pleading in the alternative, to the extent necessary, USPI breached the Employment Agreement by, among other things, failing to pay the severance obligations thereunder, including: 12 months of Base Pay; continuation of health insurance for 12 months; 2019 bonus (i, ii and iii collectively, "Severance Amounts").

**PLAINTIFF'S ORIGINAL COMPLAINT**

56. Failure to pay to pay the Severance Amounts has caused Plaintiff significant damages.

57. Plaintiff requests the Court award Plaintiff the Severance Amounts.

## JURY DEMAND

58. Plaintiff hereby demands a trial by jury of all issues so triable by applicable law, including but not limited to Federal Rule of Civil Procedure 38.

## CONDITIONS PRECEDENT

59. All conditions precedent to all relief being sought by Plaintiff have been met, performed, occurred, and/or waived.

## RESERVATION OF RIGHTS

60. The right to bring additional causes of action and to amend this Complaint, as necessary, is specifically reserved.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court enter a judgment in favor of Plaintiff Cagle against Defendant USPI as follows:

A. Order that Plaintiff be reinstated or constructively reinstated to Plaintiff's former position, with the same seniority status that Plaintiff would have had but for the discrimination and enjoin the Defendants from further retaliation against Plaintiff;

B. Award Plaintiff all back pay and benefits, including salary increases, bonuses, stock options, vacation pay and health insurance;

C. Award Plaintiff front pay and reputational damages in an amount to be proved at trial, to compensate Plaintiff for the loss of income and earning capacity that Defendant's conduct has caused;

**PLAINTIFF'S ORIGINAL COMPLAINT**

D.  Award Plaintiff money damages for the emotional distress caused by Defendant's unlawful actions;

E.  Award Plaintiff the value of all of the options under the Award Agreements that would have vested as of the date of this Court's judgment or reinstatement;

F.  Pre-judgment interest at the highest rate allowed by law:

G.  Post-judgment interest at the highest rate allowed by law;

H.  Reasonable attorneys' fees and expert witness fees;

I.  Costs of court; and

J.  Such other and further relief, whether at law or in equity, to which Plaintiff shows Plaintiff is entitled.

Respectfully submitted,

**ROGGE DUNN**
State Bar No. 06249500

Email: dunn@righttowork.com

**A. DAVID GROSS**
State Bar No. 08531200
Email: gross@roggedunngroup.com

**ROGGE DUNN GROUP, PC**
500 N. Akard Street, Suite 1900
Dallas, Texas 75201
Telephone:  (214) 888-5000
Facsimile:   (214) 220-3833

**ATTORNEYS FOR PLAINTIFF**

**PLAINTIFF'S ORIGINAL COMPLAINT**