IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON CAGLE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:20-cv-1681-BN |
| | § | |
| UNITED SURGICAL PARTNERS | § | |
| INTERNATIONAL INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant United Surgical Partners International, Inc. ("USPI") has filed a

Motion for Protective Order and Alternative Motion to Bifurcate, *see* Dkt. No. 26, and

the parties' Joint Report regarding the motion, *see* Dkt. No. 26-1.

For the following reasons, the Court denies the motion for protective order and

to bifurcate but will grant the parties' requests to extend all deadlines in this case.

## Background

Plaintiff Jason Cagle filed this lawsuit against his former employer, USPI,

alleging that he was terminated in retaliation for reporting violations of the

Sarbanes-Oxley Act ("SOX"). He asserts claims for retaliation under 18 U.S.C. §

1514A (providing protection for SOX whistleblowers) and for breach of Stock Option

Agreements (the "Award Agreements") or, alternatively, breach of his Second

Amended and Restated Employment Agreement. *See* Dkt. No. 1.

Cagle seeks discovery concerning valuations under and termination of the 2015

Equity Management Plan (the "Plan") under which he was awarded stock options.

USPI moves for a protective order to prevent discovery of those matters.

* * *

Cagle began working for USPI in 2001 as outside corporate counsel. He was hired as USPI's only in-house attorney in 2003, promoted to Senior Vice-President of Acquisitions in 2010 and then to Chief Financial Officer in 2013. *See* Dkt. No. 1 at 4.

Tenet Healthcare Corporation acquired USPI. As part of the acquisition, an equity compensation plan based solely on USPI's performance was created for USPI's management and approximately 100 key employees. *See id*. at 5-6; Dkt. No. 28 at 34-40. Cagle was awarded more than 750,000 stock options under the Plan. *See* Dkt. No. 1 at 6; Dkt. No. 28 at 20-32.

From 2016 to 2019, USPI retained KPMG LLP to value USPI and stock options available under the Plan and USPI used the KPMG valuations to set the exercise price for stock options issued under the Plan. According to KPMG's valuations, the fair market value of the stock options was $46.11 per share as of December 1, 2018; the stock options awarded to Cagle under the Plan were projected to have a value in excess of $50 million by 2022; and the value of the Plan could exceed $650 million by 2022. *See* Dkt. No. 1 at 6; Dkt. No. 26-1 at 21-22; Dkt. No. 27 at 24-25, 68, 72; Dkt. No. 28 at 44-71.

In approximately November 2018, Cagle became concerned that the potential value of the Plan and the corresponding potential liability of Tenet and its subsidiary USPI had not been publicly disclosed by Tenet in its financial disclosures. He

considered that to be a material omission given Tenet's market capitalization. *See* Dkt. No. 1 at 6-7; Dkt. No. 26-1 at 22-23.

Cagle had an in-person conversation with Bill Wilcox, who was then USPI's CEO, sometime in November 2018. Cagle complained about and notified Wilcox of his concern that Tenet would be unable to satisfy the Plan as written and the issues related to Tenet's financial reporting of the Plan. He also shared his belief that Tenet's failure to disclose may constitute a violation of SOX or other securities laws. Wilcox told Cagle to address the issues with Tenet's CFO Dan Cancelmi. *See* Dkt. No. 1 at 7; Dkt. No. 26-1 at 23.

Shortly after Cagle's in-person conversation with Wilcox, Cagle met with Cancelmi. Cagle complained about and notified Cancelmi of the issues related to Tenet's financial reporting of the Plan (*i.e.*, the same issues and concerns Cagle discussed with and reported to Wilcox). After Cagle reported the issues to Cancelmi, Tenet disclosed the book value of the Plan in its 2018 10-K but did not disclose the amounts Tenet would actually have to pay. Cagle continued to have concerns with and complained about Tenet's lack of transparency and refusal to provide full disclosure to stockholders. *See* Dkt. No. 1 at 7; Dkt. No. 26-1 at 23.

On April 26, 2019, Cagle again blew the whistle regarding Tenet's alleged improper financial reporting related to the Plan during a meeting with USPI's current CEO Brett Brodnax after an earnings call rehearsal. *See* Dkt. No. 1 at 7; Dkt. No. 26-1 at 24.

On April 27, 2019, Cagle received a call from Tenet's General Counsel Audrey Andrews. Andrews informed Cagle that Tenet had opened an investigation to determine whether Tenet should amend its financial filings, delay the next filing and earnings call, and/or take other potential actions in response to Cagle's reporting of potential violations by Tenet of SOX or other securities laws. Andrews asked Cagle to meet with lawyers from Willkie Farr & Gallagher LLP ("WFG") regarding Cagle's reporting and Tenet's investigation. *See* Dkt. No. 26-1 at 24.

On April 28, 2019, Cagle spoke with various WFG lawyers. Cagle informed the lawyers that he had raised the disclosure issue with the appropriate individuals as far back as November 2018. On April 29, 2019, Cagle received a call from Andrews who informed him that Tenet had concluded its investigation regarding his reporting and would make its financial filings with no additional disclosure. *See id.*

On May 3, 2019, CEO Brodnax told Cagle that he believed there were grounds for "cause" termination under Cagle's Employment Agreement. On May 8, 2019, USPI's Board of Director's unanimously voted to terminate Cagle's employment for cause. *See id.* at 7-8. On May 9, 2019, after the Board's vote, USPI terminated Cagle's employment for cause, specifically for "willful and continued failure to perform [Cagle's] material duties." *See id.* at 8; Dkt. No. 28 at 6, 7, 17-18. The Award Agreements state that the stock options expire immediately on the date a Plan Participant is terminated from employment for "cause." *See id.* at 23. USPI refused to honor Cagle's post-termination election to exercise his stock options under the Plan and related Award Agreements. *See* Dkt. No. 27 at 148.

In August 2019, USPI terminated KPMG and retained Barclays Capital Inc. to revalue USPI and the stock options subject to the Plan. *See* Dkt. No. 27 at 64, 68, 72. On August 19, 2019, and in reliance on Barclays' valuations, USPI set the fair market value of the shares under the Plan at a lower price than expected by Plan participants. The same month, the Board amended the Plan to include a clawback provision to retract awards for, *inter alia*, misconduct contributing to a government investigation. See Dkt. No. 28 at 40.

On February 14, 2020, USPI terminated the Plan and assigned stock options under the Plan a value of $34.13 per share, which was lower than Barclays' valuation. *See* Dkt. No. 27 at 65, 69, 73; Dkt. No. 28 at 42.

On March 9, 2020, a putative class action was filed against USPI and others on behalf of a proposed class consisting of all who participated in the Plan and refused to waive their claims against USPI for breach of the Plan. *See Andrews v. United Surgical Partners Int'l, Inc.*, No. 1:20-cv-344-LPS (D. Del. 2020) at Dkt. No. 1. One of the claims is for breach of the stock option agreements and the Plan, and the class representative alleges, among other things, that Tenet and USPI acted in bad faith to devalue the stock options before terminating the Plan. *See Andrews* at Dkt. No. 101; Dkt. No. 27 at 30-62.

Cagle filed this lawsuit on June 24, 2020. He asserts three claims.

First, Cagle asserts a claim under 18 U.S.C. § 1514A of SOX, which provides whistleblower protection for employees of publicly traded companies. Section 1514A provides that publicly traded companies covered by the Act may not "discharge,

demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee" "to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by" "a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)." *Id*. at 1514A(a)(1)(C ).

Cagle alleges that he engaged in protected activities as defined in 18 U.S.C. §1514A by providing information to persons with supervisory authority over him regarding the fraudulent reporting of USPI's equity plan which he reasonably believed constituted violations of 18 U.S.C. §§ 1341, 1343, 1344 or 1348, various rules and regulations of the Securities and Exchange Commission, and provisions of federal law relating to fraud against shareholders. Cagle further alleges that as a result of his protected activities under the Act, he was unlawfully retaliated against and ultimately fired in retaliation, which are adverse employment actions prohibited by the Act. *See* Dkt. No. 1 at 9-10.

Second, Cagle asserts a breach of contract claim for breach of the Award Agreements. He alleges that his July 27, 2015 Stock Option Agreement, November

18, 2016 Stock Option Agreement, July 14, 2017, Stock Option Agreement, March 1,

2018 Stock Option Agreement and July 30, 2018 Stock Options Agreement with USPI

(the "Award Agreements") are valid and enforceable contracts. He further alleges that

he performed, tendered performance of, or was excused from performing his

contractual obligations under the Award Agreements; USPI breached the Award

Agreements by, among other things, failing to allow Cagle to exercise various options

under the Award Agreements, and by repudiating and forfeiting options under the

Award Agreements; and USPI made certain conditions under the Award Agreements

impossible by wrongfully terminating Cagle's employment. *See* Dkt. No. 1. at 10-11.

Third, and in the alternative if he is not awarded relief under SOX, Cagle

asserts a breach of contract claim for breach of his Employment Agreement's

severance provision. *See id*. at 11-12.

Cagle "seeks to recover damages, including without limitation the value of

[Cagle's] equity that USPI wrongfully forfeited [and] … relief to make [Cagle] whole,"

*see id*. at 2, and "the value of all of the options under the Award Agreements that

would have vested as of the date of this Court's judgment or reinstatement," *see id*.

at 13.

In his initial disclosures concerning damages, Cagle contends "the vested value

of the forfeited stock options that would have vested and [Cagle] would have received

are computed by multiplying the number of options by the true value of the

options/shares minus the exercise price" and he "seeks recovery for the true value of

all options/shares, compensation and benefits Your wrongful termination prevented

[Cagle] from earning." Dkt. No. 27 at 87, 95.

On June 25, 2021, Cagle sought available dates from USPI's counsel to take

the depositions of Ron Rittenmeyer, Brett Brodnax, Dan Cancelmi, Bill Wilcox and a

USPI corporate representative to testify on the following topics:

- The value of the 2015 Stock Incentive Plan, sometimes referred to as the "USPI Equity Management Plan" (hereinafter the "Equity Plan") and the amount Tenet and/or USPI would potentially have to pay out with respect to the Equity Plan.

- The value of USPI or any equity interest in USPI (including, but not limited to, a minority interest in the common equity of USPI).

- The value analyses performed by KPMG LLP ("KPMG") and Barclays Capital Inc. ("Barclays") with respect to the Equity Plan, USPI, and any/or equity interest in USPI (specifically including directions and communications from USPI and/or Tenet to KMPG and or Barclays with respect to the valuation work being performed by KPMG and/or Tenet).

- The decision, upon termination of the Equity Plan, to place an alleged fair market value of $34.13/share on USPI stock (specifically including the alleged bases for such decision, the individuals involved in making such decision, and the process for making such decision).

- The decision to terminate the Equity Plan (specifically including the alleged bases for such decision, the individuals involved in making such decision, and the process for making such decision).

- The fair market value of USPI stock issued to [Cagle] under the Equity Plan and related Award Agreements.

- USPI's refusal to honor [Cagle's] election to exercise his stock options under the Equity Plan and related Award Agreements.

Dkt. No. 27 at 76-77 (omitting topics not related to the discovery dispute).

Cagle also sought available dates from and informed counsel for KPMG and Barclays that he intended to issue non-party subpoenas to depose their corporate representatives to testify on the following topics:

- The valuation work [that Barclays or KPMG] performed related to the value of the 2015 Stock Incentive Plan (sometimes referred to as the "USPI Management Plan") (hereinafter the "Equity Plan"), USPI, and/or any equity interest in USPI.

- Any valuation reports or draft valuation reports issued by [Barclays or KPMG] in relation to the Equity Plan, USPI, and/or any equity interest in USPI.

- Communications, instructions, comments, revisions, directions, mandates, and/or documents or information that [Barclays or KPMG] received from USPI and/or Tenet Healthcare Corporation ("Tenet") with respect to the valuation work [Barclays or KPMG] performed related to the Equity Plan, USPI, or any equity interest in USPI.

- [Barclays' or KPMG's] involvement, if any, in the decision by Tenet and/or USPI, upon termination of the Equity Plan, to place an alleged fair market value of $34.13 on USPI stock (and [Barclays' or KPMG's] knowledge of the alleged bases for such decision).

*See id.* at 79-80 (Barclays), 82-83 (KPMG).

USPI asserts that matters concerning the valuation of stock options under and termination of the Plan are outside the scope of permissible discovery under Rule 26(b). USPI seeks a protective order precluding inquiry into matters concerning the valuation of stock options under and termination of the Plan or limiting discovery on those matters to no later than May 9, 2019, the date on which Cagle was terminated. Alternatively, USPI requests the Court bifurcate discovery and trial on the issues of liability and damages.

Cagle responds that issuance of the requested protective order would prohibit him from obtaining any discovery regarding the value of more than 750,000 stock options that were awarded to him during his lengthy employment with USPI but wrongfully forfeited when USPI retaliated against and terminated Cagle for blowing the whistle.

## Legal Standards

"Unless otherwise limited by court order …, [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

"To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value." *Samsung Electronics Am., Inc. v. Chung,* 321 F.R.D. 250, 279 (N.D. Tex. June 26, 2017). "If it were otherwise, it would make little sense for Rule 26(b)(1) to direct courts to consider whether discovery that is relevant to any party's claim or defense is also important in resolving the issues." *Id.* "The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable." *Lopez v. Don Herring Ltd.,* 327 F.R.D. 567, 580 (N.D. Tex. 2018) (citing *McLeod,*

*Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). "A party resisting discovery must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.")). "'Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate.'" *Id.* (quoting *Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014)).

"Under Federal Rule of Civil Procedure 26(c), the Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Oyekwe v. Research Now Grp., Inc.*, No. 3:19-cv-1085-S-BN, 2020 WL 1064868, at *1 (N.D. Tex. Mar. 4, 2020) (citing FED. R. CIV. P. 26(c)(1)). "The burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Id.* (quoting *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998)). A protective order is warranted only "in those instances in which the party seeking it demonstrates good cause and a specific need for protection." *Id.* (citing *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990)).

**Analysis**

I.       Motion for Protective Order

USPI seeks a motion for protective order precluding inquiry into matters of valuation, including the value of stock options issued under, and termination of the Plan – or, alternatively, limiting discovery on those topics to May 9, 2019, the date on which USPI terminated Cagle's employment. USPI argues that Cagle is not entitled to discovery on claims or issues he did not plead and for which he has no standing. It also argues that complying with requests outside the scope of permissible discovery under Rule 26(b) would be unduly burdensome, expensive, and unnecessary. *See* Dkt. No. 26 at 8.

As an initial matter, USPI has not met its burden under Rule 26(b)(1) to show that complying with the objected-to discovery requests would be unduly burdensome, expensive, or unnecessary or that the requests for information concerning valuation, including the valuation of stock options awarded under the Plan, and termination of the Plan are disproportionate to the needs of the case. USPI uses conclusory language but has not offered any actual evidence of the alleged burden that it claims will result if Cagle is permitted to take depositions in this lawsuit and inquire as to the alleged basis for USPI's valuing of the stock options that comprise a large portion of Cagle's monetary damages.

Instead, USPI argues that it need not do so because those matters are burdensome on their face because they are outside the scope of permissible discovery. But that is not enough. *Cf. Samsung*, 321 F.R.D. at 279 ("Under Rule 26(b)(1),

12

discoverable matter must be both relevant and proportional to the needs of the case – which are related but distinct requirements."). And, as a result, USPI has waived any arguments concerning the burdens that it may face if Cagle is allowed to take depositions of the former and current USPI and Tenet executives and three corporate representatives on topics including valuation, including the value of stock options issued under the Plan and USPI's decision to and termination of the Plan.

That leaves USPI's relevancy objections. USPI contends that matters concerning valuations, including the value of stock options awarded under the Plan and termination of the Plan, are not relevant because Cagle did not assert claims for breach of the Plan itself or breach of the Award Agreements based on improper or bad-faith stock valuations.

But Cagle need not assert those claims because the objected-to discovery is relevant to his damages. Cagle pleaded that he seeks to recover the value of over 750,000 stock options awarded to him under the Plan and wrongfully forfeited when USPI retaliated against and unlawfully terminated him. He asserts a claim under the SOX anti-retaliation statute, which allows a whistleblower to file a "civil action to protect against retaliation in fraud cases" and states that "[a]n employee prevailing in any [anti-retaliation action] shall be entitled to all relief necessary to make the employee whole." 18 U.S.C. § 1514A(c)(1). In construing this language, the United States Court of Appeals for the Fifth Circuit has stated: "We think Congress meant what it said. All means all." *Halliburton, Inc. v. Administrative Review Board*, 771 F.3d 254, 263 (5th Cir. 2014) (citing *Kennedy v. Lynd*, 306 F.2d 222, 230 (5th Cir.

1962)). In his Complaint, Cagle specifically "seeks to recover damages, including …

relief to make [Cagle] whole." Dkt. No. at 2. He also seeks damages including "the

value of [Cagle's] equity that would have vested as of the date of this Court's judgment

or reinstatement." *Id.* at 13. Contrary to USPI's contentions, those allegations are

sufficient to plead that Cagle sought the "true value" of the stock options issued to

him under the Plan, even though he did not use the word "true" in the Complaint, as

he did in his initial disclosures and in the list of topics for the requested depositions.

USPI also argues that Cagle does not have standing to pursue discovery of

matters that occurred after Cagle was terminated, such as the alleged devaluation of

the stock options by Barclays and USPI and USPI's subsequent termination of the

Plan. USPI's standing argument is based on its assumption that, because it will

prevail in this litigation, Cagle's discovery cut-off date should be the date on which

he was terminated for cause. But the issue of whether Cagle was terminated for cause

or in retaliation for reporting a SOX violation is contested, and Cagle is entitled to

discovery on that issue. And, should Cagle prevail on his SOX claim, he would be

"entitled to all relief necessary to make [him] whole." 18 U.S.C. § 1514A(c )(1). That

relief would include the value of his stock options under the Plan had he been allowed

to exercise them.

USPI also argues that Cagle is not entitled to discovery concerning the

valuation of the stock options because the value is contractually set by a USPI

committee and binding on the Participant. *See* Dkt. No. 28 at 35 § 7(b) ("The fair

market value of Shares ... shall be determined in good faith by the Board or the

Committee, whose valuation shall be binding upon each Participant."). And it argues generally that Cagle is not entitled to the objected-to discovery because he cannot prevail on his claims. But whether a party will ultimately prevail is not the test for determining if it is entitled to discovery and Cagle need not make that showing here. "A party cannot refuse to engage in – and ... should not be excused from being subjected to – discovery simply because the discovery is relevant to a claim on which the resisting party believes that he will or should prevail." *Velazquez v. El Pollo Regio LP, LLC,* No. 3:15-cv-3170-M, 2017 WL 2289185, at \*6 (N.D. Tex. 2017); *see also Heller*, 303 F.R.D. at 489 (citing *Third Pentacle, LLC v. Interactive Life Forms, LLC*, No. 3:10cv00238, 2012 WL 27473, at \*3 (S.D. Ohio Jan. 5, 2012) (even if a party "presently holds a strong belief in the merits of [the party's] litigation positions, [the party's] strong belief – whether ultimately justified or not – provides no basis for avoiding [the party's] discovery obligations created by the Federal Rules of Civil Procedure.")).

USPI cannot use a motion for protective order to obtain a dispositive ruling depriving Cagle of any discovery concerning a substantial portion of his alleged damages.

The Court denies the motion for protective order because Cagle's requests for discovery concerning valuation, including the value of stock options issued to him under, and termination of, the Plan, are relevant to his claims. Cagle may take the depositions of Ron Rittenmeyer, Brett Brodnax, Dan Cancelmi, Bill Wilcox, and the corporate representatives of USPI, KPMG, and Barclays and inquire about the topics

listed in listed in his emails requesting available dates. *See* Dkt. No. 26-1 at 76-77, 79-80, 82-83.

II.      Motion to Birfucate

In the alternative, if the Court allows Cagle to obtain discovery concerning the valuation of stock options under and termination of the Plan, USPI asks the Court to bifurcate liability and damages at both the discovery stage and trial.

"Under [Federal Rule of Civil Procedure] 42(b), district courts have discretion to bifurcate trials '[f]or convenience, to avoid prejudice, or to expedite and economize.'" *Pharmerica Corp. v. Advanced HCA LLC*, No. 2:17-CV-00180-JRG, 2018 WL 3326822, at *1 (E.D. Tex. May 1, 2018) (quoting FED. R. CIV. P. 42(b)). "The decision to bifurcate 'is a matter within the sole discretion of the trial court.'" *Id.* (quoting *First Tex. Sav. Ass'n v. Reliance Ins. Co.*, 950 F.2d 1171, 1174 n.2 (5th Cir. 1992)).

The bifurcated issue "must be so distinct and separable from the others that a trial of it alone may be had without injustice." *State of Ala. v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 318 (5th Cir. 1978). USPI and Cagle have different positions as to whether the objected-to discovery is distinct and separable.

USPI contends that Cagle seeks to litigate the entire *Andrews* case through his request for damages, raising complex issues of valuation and bad faith that will likely prejudice USPI on the question of liability.

Cagle contends the liability and damages issues are intertwined because the issues that USPI seeks to bifurcate – that is, those related to the valuation and

16

termination of the Plan – are not only relevant to Cagle's damages, but also to liability to determine why USPI retaliated against and unlawfully terminated him.

The Court determines that it is premature to determine whether issues of liability and damages should be bifurcated at trial. But it determines that, at present and on this showing, there is no basis to now bifurcate them at this discovery stage. The Alternative Motion to Birfurcate is denied.

III.    Scheduling

Cagle requests an extension of time to disclose his expert reports until after he has taken the depositions of the current and former USPI and Tenet executives and USPI's, KPMG's and Barclays's corporate representatives. And USPI requests an extension of all deadlines if the Court grants Cagle's request for an extension.

The Court grants both requests for extensions of time and directs the parties' counsel to confer and file, by **Friday, August 27, 2021**, a joint report and proposed amended scheduling order setting forth the parties' proposed extended deadlines and pretrial conference and trial setting dates.

## Conclusion

The Court grants in part Defendant's Motion for Protective Order and Alternative Motion to Bifurcate [Dkt. No. 26] insofar as it grants the requests to extend deadlines and otherwise denies the motion.

SO ORDERED.

DATED: August 18, 2021

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE